**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Derrick Samuel Champa,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-15-0560-PHX-ROS (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

### I.   MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Yuma, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 13, 2015 (Doc. 5).  On September 18, 2015 Respondents filed their Limited Answer (Doc. 12).  Petitioner filed a Reply on October 22, 2015 (Doc. 14).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

### II.   RELEVANT FACTUAL & PROCEDURAL BACKGROUND
#### A.   FACTUAL BACKGROUND

The Presentence Investigation report provided the following factual summary of police reports:

> On January 29, 2004, officers received information that the defendant was interested in hiring somebody to carry out a murder. A meeting location was established and undercover officers contacted the defendant on January 30, 2004. The defendant stated he wanted [RD], [BD] and [JD] murdered because they were former business partners and they had "screwed" him over by taking a large

1

> portion of his business away from him. The defendant wanted [RD] killed first and then [BD] and [JD] killed approximately eight to ten months later. The defendant was willing to pay $10,000.00 to have [RD] murdered and he wanted it to appear as though [RD] had overdosed on drugs. The defendant agreed to make a $2,000.00 cash down payment on February 2, 2004.
> Undercover officers met with the defendant on February 2, 2004, and the defendant expressed a desire to change the order of the killings. The defendant was willing to pay $5,000.00 to have [BD] killed first and then he wanted [RD] killed for the sum of $10,000.00. The defendant was hopeful [JD] would die of natural causes after his two sons were murdered because he was in poor health. The defendant provided the undercover officer with $2,000.00 in cash and handwritten notes containing personal information on [RD] and [BD].

(Exhibit F, Present. Invest. at 1.)[1]  (Exhibits to the Answer, Doc. 12, are referenced herein as "Exhibit ___.")

**B.     PROCEEDINGS AT TRIAL**

On February 11, 2004, Petitioner was indicted in Maricopa County Superior Court on charges of conspiracy to commit murder and attempted first degree murder. (Exhibit A, Indictment.)  On March 25, 2004, an Amended Indictment (Exhibit B) was filed, adding separate attempted first degree murder charges, one for each of the purportedly intended victims.

Petitioner eventually entered into a written Plea Agreement (Exhibit D) wherein he agreed to plead guilty to the three counts of attempted first degree murder, with an agreement to consecutive terms of 8, 7 and 7 years, for an effective term of 22 years in prison, and dismissal of the conspiracy charge. Petitioner entered a plea pursuant to the agreement, which was accepted. (Exhibit E, M.E. 12/3/4; Exhibit KK R.T. 12/3/4.)

A Presentence Investigation report (Exhibit F) was prepared, recommending presumptive, consecutive sentences. On January 7, 2005, Petitioner was sentenced to the agreed upon prison terms.

---

[1] The defense's Settlement Conference Memo related the planned murders to a dispute over the sale of land grading business, and asserted that the agreement was limited to two victims (RD and BD), and the murder of the third victim (JD) was discussed but deferred to sometime in the future. (Exhibit C at 2-3.)

## C. PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal. (Amend. Pet., Doc. 1 at 2.) Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

## D. PROCEEDINGS ON POST-CONVICTION RELIEF

### 1. First PCR Proceeding

On April 1, 2005, Petitioner commenced his first PCR proceeding by filing his Notice of Post-Conviction Relief (Exhibit H), requesting appointment of counsel. The Court declined to appoint counsel due to the failure to provide an affidavit of indigency, and set a deadline for a PCR petition of 60 day. (Exhibit I, M.E. 4/8/5.) Petitioner failed to meet the deadline, and the PCR proceeding was dismissed. (Exhibit J, M.E. 6/27/5.)

Petitioner then filed on July 7, 2005, a Petition for Post-Conviction Relief (Exhibit K), dated June 15, 2005. The state responded, urging a summary dismissal on the merits. (Exhibit L, Response.) Petitioner then filed a Motion to Continue (Exhibit M), seeking appointment of counsel. In ruling on the motion, the PCR court noted "Defendant was ordered to represent himself in *this* Rule 32 proceeding because his indigency was not established at trial, and he did not submit an affidavit of indigency with his Notice of Post-Conviction Relief." (Exhibit N, M.E. 9/22/05 at 1 (emphasis added).) The PCR court then described the proceeding as "defendant's first Rule 32 of-right proceeding," and thus proceeded to grant the request for appointment of counsel, and set a briefing schedule. (*Id.*)

On May 16, 2006, trial counsel filed a Notice of Completion of Review (Exhibit O), evidencing an inability to find an issue for review. Petitioner filed a *pro se* Request for Information (Exhibit P), seeking copies of affidavits in support of a warrant, and identification of aggravating factors. The PCR court denied Petitioner's request, but granted an extension of time for him to file a *pro per* PCR petition. (Exhibit R, M.E. 6/29/06.)

...

Petitioner failed to do so, and on September 1, 2006, the PCR court dismissed the proceeding. (Exhibit S, Order 9/1/6.)

Petitioner did not seek review of this proceeding.

### 2. Second PCR Proceeding

Over four years later, Petitioner commenced his second PCR proceeding on August 10, 2011, by filing his second Notice of Post-Conviction Relief (Exhibit T). On August 26, 2010, the PCR court denominated this as "defendant's second Rule 32 proceeding," and dismissed the proceeding as untimely, pursuant to Ariz. R. Crim. Proc. 32.4(a). (Exhibit U, Order 8/26/10.)

Almost 18 months later, on February 13, 2012, Petitioner filed a "Notice of Appeal" (Exhibit V). Construing this as a petition for review, the Arizona Court of Appeals dismissed the matter as untimely. (Exhibit W, Order 2/27/12.)

Petitioner then filed a Petition for Review by the Arizona Supreme Court (Exhibit X) on April 23, 2012. The Arizona Supreme Court summarily denied the petition on October 4, 2012. (Exhibit Y, Order 10/4/12.)

### 3. Third PCR Proceeding

A month later, on November 5, 2012, Petitioner commenced his third PCR proceeding by filing another Notice of Post-Conviction Relief. (Exhibit Z.) Petitioner asserted *inter alia* claims of ineffective assistance of PCR counsel and newly discovered facts showing actual innocence. On November 15, 2012, the PCR court denominated this as "defendant's third Rule 32 proceeding," found the claim of actual innocence unsupported, and dismissed the proceeding as untimely, pursuant to Ariz. R. Crim. Proc. 32.4(a). (Exhibit AA, Order 11/15/12.)

Petitioner filed a motion for reconsideration, which the PCR court summarily denied on December 13, 2012. (Exhibit BB, M.E. 12/13/12.)

Petitioner then filed a Petition for Review (Exhibit CC). The Arizona Court of

Appeals granted review, but denied relief, finding that Petitioner was precluded from raising his claims by Arizona Rule of Criminal Procedure 32.2 because he "has raised or could have raised all of the issues in his petition for review in a prior petition for post-conviction relief proceeding." (Exhibit DD, Mem. Dec. 3/25/14.)

Petitioner did not seek further review of this proceeding.

### 4. Fourth PCR Proceeding

Over seven months later, on November 5, 2012, Petitioner commenced his fourth PCR proceeding by filing another Notice of Post-Conviction Relief. (Exhibit EE.) Petitioner asserted *inter alia* claims of actual innocence and lack of benefit under the plea agreement. On March 13, 2014, the PCR court denominated this as "defendant's fourth Rule 32 proceeding," found the claim of actual innocence unsupported, and dismissed the proceeding as untimely, pursuant to Ariz. R. Crim. Proc. 32.4(a). (Exhibit FF, Order 3/13/14.)

Petitioner did not seek further review of this proceeding.

### 5. Fifth PCR Proceeding and First Special Action Proceeding

On January 16, 2015, Petitioner filed in the Maricopa County Superior Court a Petition for Special Action (Exhibit GG) asserting a variety of extra judicial actions by the trial judge in accepting Plaintiff's guilty plea and sentencing Petitioner to consecutive sentences. The Petition was filed in both the original criminal action, and in a separate special action proceeding.

On March 2, 2015, the special action proceeding was dismissed on the basis that the petition challenged actions of a judge of the superior court, and the superior court had no jurisdiction to entertain such a petition. (Exhibit R-L, M.E. 3/2/15.) (Exhibits to the Reply, Doc. 14, are referenced herein as "Exhibit R-____.")

On March 9, 2015, the PCR court construed the filing in the criminal case as a notice of post-conviction relief, and dismissed it as untimely. (Exhibit HH, Order

3/9/15.)

Petitioner did not seek direct review of this proceeding.

**6.** **Second Special Action Proceeding**

On March 18, 2015, Petitioner filed a Petition for Special Action with the Arizona Court of Appeals (Exhibit II), raising the same claims presented in his special action petition to the PCR court.

On March 20, 2015, the Arizona Court of Appeals summarily denied to accept jurisdiction over the petition. (Exhibit JJ, Order 3/20/15.)

Petitioner did not seek further review.

**E.** **PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 27, 2015 (Doc. 1). Prior to a service order, Petitioner filed his Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 13, 2015 (Doc. 5). Petitioner's Amended Petition asserts the following five grounds for relief:

> In Ground One, Petitioner alleges that his due process and equal protection rights were violated when he was charged for a non-chargeable conspiracy and three counts of premeditated first degree murder, which were not cognizable in Arizona. In Ground Two, Petitioner alleges that his Fifth and Fourteenth Amendment rights were violated when the prosecution substantively amended the indictment without reconvening the grand jury. In Ground Three, he alleges that he was sentenced to consecutive sentences for "spray offenses of the same conspiracy" in violation of the Double Jeopardy Clause of the Fifth Amendment. In Ground Four, he alleges that he was denied the effective assistance of trial and post-conviction counsel in violation of the Sixth Amendment. In Ground Five, Petitioner alleges that he is actually innocent and that his conviction constitutes a miscarriage of justice.

(Order 6/8/15, Doc. 6 at 2.)

**Response** - On September 18, 2015, Respondents filed their Limited Answer (Doc. 12). Respondents argue the Petition is untimely by over 7 years, waiver by

Petitioner's guilty plea, Grounds 1, 2, 3 and 4 are procedurally defaulted, and Ground 5 (actual innocence) is not cognizable.

**Reply** - On October 22, 2015, Petitioner filed a Reply (Doc. 14). Petitioner argues the merits of his claims (*id.* at 1, *et seq.*), that ineffective assistance of PCR counsel excuses his procedural defaults (*id.* at 22, *et seq.*), his guilty plea did not waive his claims (*id.* at 25), and he is actually innocent (*id.* at 29, *et seq.*).

### III. APPLICATION OF LAW TO FACTS

**A. TIMELINESS**

**1. One Year Limitations Period**

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

Respondents argue that Petitioner's conviction became final on October 6, 2006, and expired on October 7, 2007, and Petitioner is not entitled to statutory tolling for his subsequently filed proceedings, and is not entitled to equitable tolling.

**2. Commencement of Limitations Period**

**a) Conviction Final**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]

---

[2] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

7

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007). "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

Here, the state court recognized Petitioner's first PCR proceeding as his "first Rule 32 of-right proceeding." (Exhibit N, M.E. 9/22/05 at 1.) That proceeding remained pending through September 1, 2006, when the PCR court dismissed the proceeding. (Exhibit S, Order 9/1/6.)

Under Arizona Rule of Criminal Procedure 32.9(c), Petitioner had thirty days after the dismissal of his petition to seek review in the Arizona Court of Appeals. Moreover, Arizona applies Arizona Rule of Criminal Procedure 1.3 to extend "the time to file an appeal by five days when the order appealed from has been mailed to the interested party and commences to run on the date the clerk mails the order." *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990). This rule has been extended to post-conviction relief proceedings. *See State v. Goracke*, 210 Ariz. 20, 21 n.1, 106 P.3d 1035, 1036 n.1 (Ct. App. Div. 1 2005). *See also State v. Brock,* 163 Ariz. 523, 526, 789 P.2d 390, 393 (Ct. App. Div. 1 1989) (supplemental opinion), *aff'd*, 165 Ariz. 296, 798 P.2d 1305 (1990) (applying to PCR motion for reconsideration of appellate court ruling).

Here, the PCR court's ruling was not filed, and presumably thus not mailed, until September 11, 2006. (Exhibit S.) Assuming notice was such by mailing, then under Rule 1.3, Petitioner would have had through Monday, October 16, 2006 to file his petition for review. Thus, his conviction would have become final by the conclusion of direct review on October 16, 2006.

### b) New Rule

Petitioner argues that the Supreme Court's decisions in *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), *Missouri v. Frye*, 132 S.Ct. 1399 (2012), and *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) constitute significant changes in the law.[3] (Reply, Doc. 15 at 24.)

The habeas limitations statue provides a later commencement date of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).

However, none of these cases announced a new rule of constitutional law. *See Buenrostro v. United States*, 697 F.3d 1137, 1139 (9th Cir. 2012) ("*Martinez*…did not announce a new rule of constitutional law"); *Id.* at 1140 ("neither *Frye* nor *Lafler*…decided a new rule of constitutional law").

Moreover, even assuming they established a new constitutional right, § 2244(d)(1)(C) requires that such a new right be made "retroactively applicable to cases on collateral review." Petitioner points to no decision making these cases retroactively applicable. The undersigned knows of none.

Thus, Petitioner's claims in his Petition are not founded on a constitutional right within the purview of 28 U.S.C. § 2244(d)(1)(D), and the finality of his conviction remains the proper commencement date for his habeas limitations period.

### c) Conclusion re Commencement

Therefore, Petitioner's one year began running no later than October 16, 2006, and without any tolling expired no later than Monday, October 15, 2007.

### 3. Timeliness Without Tolling

Petitioner's Amended Petition (Doc. 5) was filed on May 13, 2015.

---

[3] It is not clear which claim Petitioner believes was triggered by *Lafler* and *Frye*, which applied *Strickland* in the context of a rejected plea offer. Here, Petitioner accepted the plea offer. *Martinez* was limited to ineffectiveness of PCR counsel as cause to excuse a procedural default, but declined to find a constitutional right to such counsel.

However, the Petition includes Petitioner's declaration that it was "placed in the prison mailing system on May 11, 2015." "In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). The undersigned finds that the Petition was delivered to prison officials for mailing on that date, and that it should be deemed "filed" as of May 11, 2015.

As determined in subsection (1) above, without any tolling Petitioner's one year habeas limitations period expired no later than October 15, 2007, making his amended Petition over seven years delinquent.

**<u>Original Petition</u>** – Petitioner's original Petition (Doc. 1) was filed March 27, 2015, and reflects its placement in the prison mail system on March 25, 2015. (Doc. 1 at 12.)

Applications for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.  Similarly, Rule 11 of the Rules Governing Section 2254 Cases provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to the petitions filed under these rules."

Rule 15(c), Federal Rules of Civil Procedure provides that an "amendment of a pleading relates back to the date of the original pleading when . . .  (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  "The central policy of Rule 15(c)--ensuring that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment" is satisfied where the claims in the amended petition were included in the original petition. *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000).

Even assuming that Petitioner's Amended Petition relates back in time to March 25, 2015, it still is more than seven years delinquent.

**4.      Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

**Application to Petitioner** - Petitioner's limitations period commenced running no later than October 16, 2006 upon conclusion of Petitioner's first PCR proceeding and expired no later than October 15, 2007. Petitioner's second PCR proceeding was not commenced until August 11, 2010, when Petitioner filed his second Notice of Post-Conviction Relief (Exhibit T).[4] At that time, his one year had been expired for almost three years. Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner has no statutory tolling resulting from his second PCR proceeding, or from his third, fourth, or fifth PCR proceedings, or from his petitions for special action, and his limitations period expired no later than October 15, 2007.

Consequently, Petitioner's habeas petition was over seven years delinquent.

**5.      Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2)

---

[4] That notice was dated August 4, 2010. Even if assumed to be subject to the prison mailbox rule and deemed filed on that date, the difference of seven days would render Petitioner's habeas petition timely.

> that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

As a basis for excusing his untimely filing, Petitioner points to the ineffective assistance of his PCR counsel, and the erroneous dismissal of his first PCR petition. (Petition, Doc. 1 at "11.")

**Ineffective Assistance of PCR Counsel** – Petitioner complains that his PCR counsel was ineffective for failing to raise the claims eventually asserted by Petitioner, and failing to assist Petitioner. (Reply, Doc. 14 at 22, *et seq*.)

Although an attorney's behavior can establish the extraordinary circumstances required for equitable tolling, mere negligence or professional malpractice is insufficient. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001). A "garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling.' " *Holland v. Florida*, 560 U.S. 631, 651-652 (2010). Rather, the attorney's misconduct must rise to the level of extraordinary circumstances. *Id.* Conversely, an attorney's abandonment of the representation resulting in a untimely habeas filing may establish tolling. *Id.* (concluding that repeated failures to respond to a client's inquiries over a period of years, and demands for timely action, might establish equitable tolling). Here, Petitioner simply asserts a garden

variety claim of ineffectiveness, *i.e.* the failure to identify and present claims. Rather than abandoning Petitioner, counsel followed the appropriate procedure when counsel concludes there are no viable claims to present. (*See* Exhibit O, Not. Completion at 2 (citing *Lammie v. Barker*, 185 Ariz. 263, 915 P.2d 662 (1996), *Montgomery v. Sheldon*, 181 Ariz. 256, 889 P.2d 614 (1995), op. sup., 182 Ariz. 118, 893 P.2d 1281 (Montgomery II) ( 1995), and *State v. Rodriguez*, 183 Ariz. 331, 903 P .2d 639 (App. 1995)).)

Moreover, Petitioner fails to proffer any argument how PCR counsel's failings resulted in Petitioner's extensive delay in bringing the instant habeas proceeding. At most, Petitioner argues that they establish cause for a failure to fairly present his claims, an issue relevant only to Respondents' procedural default defense, which is not reached herein.

Accordingly, Petitioner's claims of ineffective assistance of PCR counsel do not establish grounds for equitable tolling.

**Denial of PCR Petition** – Petitioner complains that his PCR petition was erroneously dismissed. Assuming that to be the case, Petitioner fails to explain how that made it impossible for him to timely file his federal habeas petition.

**Conclusion re Equitable Tolling** – Petitioner fails to show extraordinary circumstances making it impossible for him to timely file the instant petition, and therefore he is not entitled to equitable tolling.

6. **Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013). To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*,

13

513 U.S. 298, 327 (1995)). This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.* at 1936 (quoting *Schlup,* 513 U.S. at 316).

It is unclear whether the actual innocence gateway applies to defendants who were not convicted on trial, but pled not guilty or no contest. *See Smith v. Baldwin,* 510 F.3d 1127, 1140 (9th Cir. 2007). *But see Bousley v. U.S.,* 523 U.S. 614, 624 (1998) (remanding for development of actual innocence to excuse procedural default of pleading federal defendant). For purposes of this Report & Recommendation, the undersigned presumes that the actual innocence gateway applies to Petitioner's guilty plea convictions.

Petitioner makes no such claim of actual innocence in this proceeding.

At best, Petitioner argues that there was no evidence to support the conspiracy charge which was dismissed as part of the plea agreement, because the only other party was the government, and that he has shown a lack of evidence on Count 4 regarding the murder of victim JD. (Amended Pet., Doc. 5 at 9A (Ground 5); Reply, Doc. 14 at 29.)

But, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative, new evidence of innocence. *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence). This principle is particularly applicable where a defendant, like Petitioner, was convicted upon his guilty plea and not at trial.

Moreover, Petitioner's theory of innocence on the conspiracy charge is founded upon a mistake of law. In *State v. Felkins*, 156 Ariz. 37, 749 P.2d 946 (1988), Division 1 of the Arizona Supreme Court construed Arizona's conspiracy statute, Ariz. Rev. Stat. § 13-1006, as adopting a "unilateral view of conspiracy." The *Felkins* court noted that

while other jurisdictions have adopted a bilateral view of conspiracy, "A.R.S. § 13–1006(A)(3) specifically provides that it is no defense that the other person does not have the state of mind sufficient for the commission of the offense. This applies to undercover policemen, informants, or other government agents." 156 Ariz. at 39, 749 P.2d at 948.

Petitioner proffers as the basis for his assertion of actual innocence on Count 4 the contents of his Settlement Conference Memorandum (Exhibit C). (Reply, Doc. 14 at 32.) In that memorandum, Petitioner argued that no agreement on the murder of JD (father of the other two victims) had been reached:

> After Gibbs raised [JD]'s name, Champa stated that he hoped he would die a natural death given his poor health and after the death of his sons.
> At no point did Champa give specific details about the murder of [JD] or discuss the amount it would cost. Additionally, in an interview with undersigned counsel on October 26, 2004, Officer Gibbs agreed that there was never a meeting of the minds between Gibbs and Champa as to [JD]. Thus, Champa cannot now be held criminally responsible for the attempted murders of all three individuals and at the very most, can only be held accountable for the attempted murder of [BD] and [RD].

(Exhibit C at 4.) This memorandum, written by Petitioner's counsel, does not constitute evidence.

Moreover, apart from the reference to an interview with the officer, this memorandum proffers no evidence of Petitioner's innocence of Count 4. Even if Petitioner could adequately establish that he did not retain the officer to kill JD, the arguments in the memorandum reflects that Petitioner was undertaking the murder of RD and BD with the intention of indirectly causing the death of JD. Ariz. Rev. Stat. § 13-1105(A)(1) defined murder as "intending or knowing that the person's conduct will cause death, the person causes the death of another person." Here, under Petitioner's version of the facts, he intended to cause the death of JD, albeit indirectly. *Cf. State v. Edwards*, 136 Ariz. 177, 186, 665 P.2d 59, 68 (1983) (felony murder supported where victim's death resulted from poor health and stress of robbery). It was unnecessary to show that the plan would have worked. "[A]ll that is required to sustain an attempted murder conviction is evidence of some overt act or steps taken toward the commission of ...

[murder] and an intent to commit the crime." *State v. Cleere*, 213 Ariz. 54, 57, ¶ 5, 138 P.3d 1181, 1184 (App. 2006) (citations and quotations omitted). Petitioner's intent was reflected from his stated desire to cause the death of JD, and his overt act in furtherance was the retention of Gibbs to murder RD and BD.

Further, to the extent that Petitioner asserts his actual innocence on a charge on which he was not convicted (the dismissed Count 1 charging conspiracy to commit first degree murder) such innocence is necessary, but not sufficient to pass the *Schlup* gateway. "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624. Although deciding the issue as "a question of first impression," the Ninth Circuit has concluded "both as a matter of law and of common sense, that a demonstration of actual innocence under *Schlup* cannot excuse a petitioner's procedural default for more than the counts as to which he has shown actual innocence." *Vosgien v. Persson*, 742 F.3d 1131, 1136 (9th Cir. 2014). *See Alvarez v. Gipson*, 2014 WL 1017607, at *2 (N.D. Cal. Mar. 12, 2014) (applying *Vosgien* to actual innocence gateway to statute of limitations). Thus, even if Petitioner could establish his actual innocence of dismissed Count 1 and/or Count 4, he would be entitled to no relief on counts on which he failed to show his actual innocence.

In sum, Petitioner fails to show his actual innocence so as to avoid the effect of his untimely filing.

### 7. Summary re Statute of Limitations

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period commenced running no later than October 16, 2006, and expired no later than October 15, 2007, making the present Petition over seven years delinquent. Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay. Consequently, the Petition must be dismissed with prejudice.

**B.  OTHER DEFENSES**

Because the undersigned concludes that Petitioner's Petition is plainly barred by the statute of limitations, Respondents' other defenses are not reached.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the

district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Amended Petition for Writ of Habeas Corpus, filed May 13, 2015 (Doc. 5) and this action be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.   EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

47 (9th Cir. 2007).

Dated: February 2, 2016

15-0560r RR 16 01 26 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge